UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH WALTON, #491740,                           Case No. 2:22-cv-14

               Plaintiff,                           Hon. Jane M. Beckering
                                    U.S. District Judge

    v.

UNKNOWN MEEHAN,

               Defendant.

_____/

## **REPORT AND RECOMMENDATION**

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment.    (ECF No. 19.)    It also addresses Plaintiff's apparent abandonment of his claim.

Plaintiff — state prisoner Kenneth Walton — filed suit pursuant to 42 U.S.C. § 1983 on January 26, 2022.  In his verified complaint, Walton asserts that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Defendant Corrections Officer (CO) Unknown Meehan retaliated against him in violation of his First Amendment rights.  More specifically, Walton asserts that after he filed grievances against CO Meehan, Meehan searched Walton's cell and issued Walton a false retaliatory Class I Misconduct for Possession of Dangerous Contraband (a tattoo gun).  Walton says the tattoo gun belonged to his cell mate at

the time, and that his cell mate told the administration as much.  Walton sues CO Meehan in his individual and official capacities for monetary and declaratory relief.

CO Meehan now moves for summary judgment on multiple grounds.  As an initial matter, Meehan asserts that Walton failed to exhaust his retaliation claim through the grievance process.  Meehan then asserts that Walton's retaliation claim must fail because he cannot establish the causation element of his claim.  Meehan says that he was unaware of the grievances that Walton had filed against him prior to issuing the Class I Misconduct.  Moreover, an Administrative Law Judge (ALJ) found that Walton was guilty of the Class I Misconduct despite Walton's assertions that the tattoo gun belonged to his cell mate, and that CO Meehan had set Walton up in an effort to retaliate against him; Meehan says that the ALJ's findings are entitled to preclusive effect.  Finally, CO Meehan asserts that he is entitled to qualified immunity in his individual capacity and sovereign immunity in his official capacity.

Walton did not respond to Meehan's motion for summary judgment.  In fact, Walton has not filed anything in this case since February 10, 2022.  Additionally, a review of the Michigan Department of Corrections (MDOC) Offender Information Tracker System reveals that Walton is currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.  But the address that the Court has on file from Walton is the Chippewa Correctional Facility in Kincheloe, Michigan.  As such, Walton has failed to update his address with this Court and appears to have abandoned the prosecution of this case.

The undersigned respectfully recommends that the Court dismiss this case based on Walton's failure to prosecute his claim.  Alternatively, the undersigned recommends that the Court dismiss this case because there are no genuine issues of material fact with respect to the causal element of Walton's retaliation claim; the ALJ's findings that Walton possessed dangerous contraband and that CO Meehan did not set Walton up in an effort to retaliate against him are entitled to preclusive effect.

## II.    Factual Allegations

Walton's factual allegations are straightforward.  He says that CO Meehan supervised his housing unit at URF.  (ECF No. 1, PageID.2.)  Walton says that on April 29, 2020, he wrote a grievance against CO Meehan for past retaliation.  The same day, Walton says that Meehan stopped at this cell door and stated: "You want to keep writing grievances, it's my turn to get down." (*Id.*)  CO Meehan then searched Walton's cell and reported that he found a tattoo gun in Walton's area of control.  (*Id.*)  Meehan wrote Walton a Class I Misconduct for Possession of Dangerous Contraband. (*Id.*, PageID.3.)

Walton further alleges that on April 30, 2020, his cellmate provided URF administration with a witness statement explaining that the tattoo gun belonged to the cellmate.  (*Id.*)  The cellmate stated that the tattoo gun was in his area of control during the search, not Walton's.  (*Id.*)

3

### III.    Failure to Prosecute

Before addressing CO Meehan's motion, the undersigned notes that Walton appears to have abandoned the prosecution of his claim.  The Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order.  It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute.  *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962).  As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., id., at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:

> "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.

> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes

a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted). And this Court's rules provide that a case may be dismissed for want of prosecution when a plaintiff fails "to keep the Court apprised of a current address." W.D. Mich. LCivR 41.1.

 Walton has not filed anything with this Court in over a year. (*See* ECF No. 5 (Statement Regarding Consent).) Walton has not updated the Court with his current address. *See MDOC Offender Tracking Information System*, https://mdocweb. state.mi.us/otis2/otis2profile.aspx?mdocNumber=491740 (last visited April 6, 2023) (reflecting that Walton is currently incarcerated at the Bellamy Creek Correctional Facility). And Walton has not responded to CO Meehan's motion for summary judgment filed February 22, 2023. While it is possible that Walton failed to respond because he never received CO Meehan's motion, it is not the obligation of Meehan, nor of this Court, to track down Walton so that he may prosecute the case that he filed. Accordingly, the undersigned thinks it appropriate to dismiss this action for want of prosecution. But in the event that the Court disagrees, the undersigned will consider the merits of CO Meehan's motion for summary judgment.

## IV.    Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### a.  Exhaustion Analysis

CO Meehan argues in part that Walton failed to exhaust his administrative remedies with respect to his retaliation claim.  A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the

burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable

procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

CO Meehan argues that Walton had to properly exhaust the MDOC's grievance process with respect to his retaliation claim. (ECF No. 20, PageID.73.) Not so. Courts in the Sixth Circuit have long held that when an inmate claims to have received a retaliatory misconduct ticket, the misconduct hearing process is the available administrative remedy. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).[1] If the inmate claims he received a retaliatory Class I Misconduct, he must raise the retaliation issue at the initial hearing and then submit a Request for Rehearing raising the same issue. *Id.* at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I Misconduct appeal process). If the inmate claims he received a retaliatory Class II or III Misconduct, he must raise the retaliation issue at the initial hearing and then file an appeal raising the same. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R&R adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III Misconduct appeal process).

---

[1]    In *Siggers*, the Sixth Circuit evaluated the exhaustion of a misconduct-related retaliation claim by looking to the misconduct appeal process. 652 F.3d at 693-94. However, the undersigned acknowledges that in an unpublished opinion written the same year, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011). But it is published decisions that are binding within the Circuit, and *Reynolds-Bey* is not a published decision. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)).

Walton's Misconduct Hearing Report reflects that Walton raised the retaliation issue during his Class I Misconduct hearing. (ECF No. 20-3, PageID.88.) Though there is no Request for Rehearing in the record raising retaliation, it is CO Meehan's burden to identify the proper administrative remedy and prove that Walton failed to exhaust that remedy. Accordingly, the undersigned finds that there are genuine issues of fact with respect to whether Walton exhausted his available administrative remedies. The undersigned therefore turns to the merits of Walton's retaliation claim.

### b. Retaliation Analysis

Walton alleges that after he filed grievances against CO Meehan, CO Meehan retaliated by searching Walton's cell, reporting that he found a tattoo gun in Walton's area of control, and issuing Walton a Class I Misconduct for Possession of Dangerous Contraband. (ECF No. 1, PageID.3.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

In moving for summary judgment, CO Meehan does not contest that Walton was engaged in protected conduct when he filed a grievance against CO Meehan.  Nor does CO Meehan contest that a Class I Misconduct constitutes an adverse action.  Instead, CO Meehan contests the third element of Walton's claim: retaliatory motive.  (ECF No. 20, PageID.65-70.)   At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to this causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

Here, Walton's allegation that CO Meehan entered his cell on April 29, 2020 and stated: "You want to keep writing grievances, it's my turn to get down" (ECF No. 1, PageID.2), is sufficient to shift the burden to CO Meehan to establish that he would have taken the same action in the absence of Walton's protected activity.

For his part, CO Meehan avers that ALJ Sheila E. O'Brien, who acted as the Hearing Officer for Walton's Class I Misconduct hearing, already determined that the tattoo gun was in Walton's area of control, and that Meehan did not issue the Class I Misconduct in an attempt to retaliate against Walton. (ECF No. 22, PageID.69.)  And Meehan says that ALJ O'Brien's findings are entitled to preclusive effect.  (*Id.*, PageID.67-70.)

For a Hearing Officer's determinations to be entitled to preclusive effect, courts look to whether: "1) the state agency 'acted in a judicial capacity'; 2) the hearing officer

'resolved a disputed issue of fact that was properly before it'; [and] 3) the prisoner 'had an adequate opportunity to litigate the factual dispute'." *Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (quoting *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013)). "[I]f these other three requirements are met, we must 'give the agency's finding of fact the same preclusive effect it would be given in state courts.'" *Id.* (quoting *Peterson*, 714 F.3d at 913 (6th Cir. 2013)).

     Walton's Misconduct Hearing Report is shown below:

## CLASS I MISCONDUCT HEARING REPORT

Rev. 10/10

| Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
|----------|---------------|---------------|------|----------------|
| **491740** | **Walton** | URF | R 226 | 04/29/2020 |

Charge(s)

**Possession of Dangerous Contraband**

| If Charge Changed by Hearing Officer | Plea |
|---|---|
|  | ☒ Guilty   ☐ Not Guilty |

| | | |
|---|---|---|
| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

### EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT

The hearing is conducted via video teleconferencing.  Unless otherwise noted all documents are one page.  The prisoner is present and the misconduct report is reviewed with him along with his bunkie said it was in his shoe and he searched 3 days prior and it was not there and Meehan is setting him up, Prisoner Walker (933571)'s statement that it was in his shoe and not under the bunk, Contraband Removal Record, and picture. Prisoner Walton states that it was his bunkies in his bunkies shoes and the officer planted it there becaue he grieved him two weeks ago because he kept taking his showers and privileges.  Prisoner has nothing further to add.  No further evidence is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

### REASONS FOR FINDINGS

Prisoner Walton had under his mattress in his area of control and therefore in his possessin a tattoo device without staff authorization on 4-29-20 at 1910 hrs.  A tattoo device is Dangerous Contraband per the definition of the charge. The prisoners' statements are not believed because it makes no sense that Officer Meehan would find a tattoo device in one prisoners area and choose not to write up the prisoner had it and set up another prisoner who did nothing wrong.  The Officer is clear and factual in his statement and is found to be credible.  The charge is upheld.

### PROPERTY DISPOSITION (for contraband see PD 04.07.112)

It should be destroyed

### FINDINGS

| | | | | | |
|---|---|---|---|---|---|
| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 030 |
| Charge No. 2 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | ____ |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | ____ |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | ____ |

### DISPOSITION (select one or more) (Toplock & LOP Sanctions End at 6:00 am)

| | Begins | Ends | | |
|---|---|---|---|---|
| ____ Days of Detention | _____ | _____ | Days Credit | _____ |
| ____ Days Top Lock | | | Hours Extra Duty | _____ |
| 30 Days Loss of Privileges | 05/04/2020 | 06/03/2020 | $ _____ Restitution | |

| | |
|---|---|
| Misconduct Hearing Report personally handed to Prisoner by Hearing Officer on this date: _____ (Check if Applies) ☐ | Hearing Report given to Staff Member by Hearing Officer for Delivery to Prisoner this date: **5/4/2020** (Check if Applies) ☒ |
| Date of Hearing **05/04/2020** | Name of Staff Member  **McCollum** |

| Hearing Officer's Name | Hearing Officer's Signature | Date |
|---|---|---|
| O'Brien 052 | | 5-4-20 |

DISTRIBUTION   Record Office,  Central Office File,  Prisoner,  Counselor File,  Hearing Investigator

(ECF No. 20-3, PageID.88.)

The hearing report indicates that ALJ O'Brien acted in a judicial capacity by considering evidence entered into the record by Walton and CO Meehan, holding a

formal hearing in which the parties were permitted to argue their accounts of the incident, and "issu[ing] a written final decision that . . . could have been subject to direct review in state court." *Peterson*, 714 F.3d at 912.  Because the hearing was for a Class I Misconduct, Walton was provided with a "raft of judicial-type protections," including, but not limited to, a hearing without undue delay, reasonable notice, and a right to appeal.  *Id.* at 912-913.

As indicated by CO Meehan, the Misconduct Hearing Report reflects the following determinations of fact: (1) CO Meehan found the tattoo gun in Walton's area of control, and (2) Meehan did not "plant" the tattoo gun in Walton's area of control in an effort to retaliate against him.  In the opinion of the undersigned, these factual disputes, which formed the basis for the charge and for Walton's defense thereto, were properly before ALJ O'Brien.

Furthermore, Walton was provided an opportunity to litigate the above disputes during the misconduct hearing.  Indeed, Walton provided a statement from his cellmate indicating that the tattoo gun did not belong to Walton, and he also testified that CO Meehan had set him up in order to retaliate against him for filing grievances.

Finally, because the aforementioned requirements are met, and resolving the factual disputes was essential to ALJ O'Brien's decision, ALJ O'Brien's findings would be given preclusive effect by the Michigan courts.  *Peterson*, 714 F.3d at 917. Thus, the undersigned concludes that ALJ O'Brien's findings are entitled to preclusive effect, and that CO Meehan has established that retaliatory motive was

not the but-for cause behind his issuance of the Class I Misconduct.  *See White v. McKay*, No. 2:17-CV-00099, 2022 WL 9809818, at \*3-4 (W.D. Mich. Aug. 12, 2022) (finding that the Hearing Officer's rejection of the plaintiff's retaliation defense to a Class I Misconduct was entitled to preclusive effect), *R&R adopted sub nom. White v. Goodell*, No. 2:17-CV-99, 2022 WL 4591501 (W.D. Mich. Sept. 30, 2022); *Mays v. Perala*, No. 2:17-CV-00095, 2019 WL 4609928, at \*6 (W.D. Mich. Aug. 5, 2019) (same), *R&R adopted* No. 2:17-CV-95, 2019 WL 4601712 (W.D. Mich. Sept. 23, 2019).

In sum, the undersigned finds that there are genuine issues of fact bearing on whether Walton exhausted his retaliation claim.  But because ALJ O'Brien's findings in Walton's Class I Misconduct hearing are entitled to preclusive effect, and because ALJ O'Brien determined that Meehan did not plant the tattoo gun in Walton's area of control in an effort to retaliate against Walton, there are no genuine issues of *material* fact.  The undersigned therefore recommends that the Court grant CO Meehan's motion for summary judgment.

### c.  Qualified and Sovereign Immunities

In addition to arguing that he did not violate Walton's rights under the First Amendment, CO Meehan asserts that he is entitled to qualified immunity in his individual capacity and sovereign immunity in his official capacity.  (ECF No. 20, PageID.75-77.)

CO Meehan's claim for qualified immunity is largely redundant.  After initially arguing that he is entitled to judgment because he did not violate Walton's First Amendment rights, he argues that he is entitled to qualified immunity because he

14

did not violate Walton's First Amendment rights.[2]  In any event, the undersigned agrees; because there are no genuine issues of material fact and the undersigned finds that CO Meehan did not violate Walton's First Amendment rights, Meehan is entitled to qualified immunity.  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

CO Meehan's claim for sovereign immunity is different.  Meehan argues that he is entitled to sovereign immunity in his official capacity as to Walton's claims for monetary damages regardless of the merits of Walton's claims.  (ECF No. 20, PageID.77-78.)

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Section 1983 did not expressly

---

[2]    In other words, CO Meehan does not argue that the rights at issue were not clearly established.

abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Walton sues CO Meehan in his official and individual capacities for monetary damages and declaratory relief. (ECF No. 1, PageID.3, 17.) As such, in the opinion of the undersigned, CO Meehan is entitled to sovereign immunity with respect to Walton's official-capacity claim against Meehan for monetary damages.

## V.    Recommendation

The undersigned respectfully recommends that the Court dismiss this case based on Walton's failure to prosecute his claim. Alternatively, the undersigned recommends that the Court dismiss this case because there are no genuine issues of material fact with respect to the causal element of Walton's retaliation claim; the ALJ's findings that Walton possessed dangerous contraband and that CO Meehan did not set Walton up in an effort to retaliate against him are entitled to preclusive effect.

If the Court accepts this recommendation, this case will be dismissed.


Dated:  April 10, 2023                              /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).